**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **Case No. 2:21-cr-196-JDW** |
| | : | |
| **JAHKEEM MOORE** | : | |

## MEMORANDUM

Jahkeem Moore asks the Court to suppress evidence obtained against him after execution of a search warrant for his apartment. If police officers had asked this Court for a warrant based on the evidence that they presented to a magistrate, the Court might have said, "No." Or at least asked for more information before granting the warrant. But the Court does not have to conduct a *de novo* review to admit the evidence. Instead, it has to answer two questions. First, was there a substantial basis for the magistrate who issued the warrant to conclude that there was probable cause to conduct a search? Second, could the officers who executed the warrant rely on it in good faith, even if it was flawed?

If the answer to either question is "yes," then the Court must deny Mr. Moore's suppression motion. As it turns out, the answer to both questions is "yes." That is, the magistrate had a substantial basis to find probable cause and issue the warrant, and, even if she did not, the officers could rely in good faith on the warrant to obtain the evidence. The Court will therefore deny Mr. Moore's motion.

I.      BACKGROUND

On May 27, 2020, Philadelphia Police Officers Jason Cowdery and Franklin Latorre were working "in the area of 3700 Gateway Drive in Philadelphia looking for" Mr. Moore, who was wanted on an assault warrant. (ECF No. 18 at 19.) Mr. Moore had a vehicle registered to 3700 Gateway Drive, Apartment B118. Around 11:15 a.m., officers arrested Mr. Moore after they saw him exit the "front entrance of 3700 Gateway s Drive Apartment 'B' building." (*Id.*) Upon his arrest, officers searched Mr. Moore and seized "195 clear zip-lock packets, each containing a blue glassine stamped 'WOLF' filled with alleged heroin; five clear heat-sealed packets of alleged crack cocaine; $458.00 United States Currency; four mobile telephones; and one black magnetic key later determined to fit the door to Apartment B118." (*Id.*)

After the arrest, one of the officers "checked with the Gateway Towers rental office and determined [that Mr.] Moore reside[d] in 3700 Gateway Drive Apartment B Building." (*Id.*) Fearing that someone might remove or destroy evidence, the officers held Apartment B118 for a search warrant and contacted Officer Jason Yerges to obtain a search warrant for the apartment. Officer Yerges field-tested the packages of alleged crack, and the test was positive.

Officer Yerges completed an affidavit of probable cause supporting an application for a search warrant.  The application sets forth the facts set forth above and relates Officer Yerges's experience in drug enforcement. Based on this information, Judge Naomi Williams of the Philadelphia Municipal Court issued a search warrant for Apartment B118, which officers executed later that

day. During the search, officers recovered additional drugs, firearms, and drug paraphernalia.

On July 7, 2021, Mr. Moore moved to suppress evidence obtained from his apartment, arguing that the affidavit of probable cause lacked evidence to establish probable cause and that the good-faith exception does not apply because the warrant is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. The Court held a suppression hearing on September 2, 2021.

## II.    LEGAL STANDARD

The Fourth Amendment of the United States Constitution prohibits "unreasonable search and seizures." U.S. CONST. Amend. IV. "Ordinarily, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir.2010). Probable cause exists when, considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. It is a "fluid concept that turns on the assessment of probabilities in particular factual contexts." *United States v. Stearn*, 597 F.3d 540, 554 (quoting *Gates*, 462 U.S. at 232). The defendant bears the burden of establishing that his Fourth Amendment rights were violated. *Id.* at 551.

Where, as here, a magistrate has made a probable cause determination and issued a search warrant, "the role of the reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a

3

substantial basis for concluding that probable cause existed.'" *Stearn*, 597 F.3d at 554 (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). If the court finds a substantial basis to support magistrate judge's probable cause finding, it "must uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'" *Id.* (quoting *United States v. Conley*, 4 F. 3d 1200, 1205 (3d Cir. 1993)).

This "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quote omitted). Still, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n. 10. "The reviewing court's circumscribed duty means it may only consider those facts that were before the magistrate, *i.e.*, the facts contained in the affidavit of probable cause." *United States v. Rosario*, No. CR 17-553, 2018 WL 847779, at *3 (E.D. Pa. Feb. 13, 2018), *aff'd,* 837 F. App'x 117 (3d Cir. 2020). "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner." *Miknevich*, 638 F.3d at 182.

III.   **DISCUSSION**

A.   **Probable Cause**

"[D]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002). Instead, probable cause "can be, and often is inferred from the type of crime, the nature of the items sought, the suspect's opportunity

for concealment and normal inferences about where a criminal might hide evidence." *Id.* (quoting *Jones*, 994 F.2d at 1056). This is particularly true when the crime under investigation is drug distribution. Indeed, the Third Circuit has repeatedly explained that "it is a reasonable inference to conclude that drug dealers often store evidence of drug crime in their residences." *Burton*, 288 F.3d at 104; *see also United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 2001); *United States v. Williams*, 974 F.3d 320, 351 (3d Cir. 2020). Still, a magistrate judge may make such an inference only if the evidence supports three preliminary premises: (1) the suspected person is actually a drug dealer; (2) the place to be searched was possessed by, or the domicile of, the dealer; and (3) that place contains contraband linking it to the dealer's drug activity. *Burton*, 288 F.3d at 104. The Third Circuit requires "some evidence" of each premise. *See U.S. v. Stearn*, 597 F.3d 540, 559 (3d Cir. 2010). The Court addresses each premise in turn.

### 1.    Evidence that Mr. Moore was a drug dealer

Officer Yerges's affidavit provides a basis for Judge Williams to find probable cause that Mr. Moore was a drug dealer. It recites the reasons that Officer Yerges suspected that Mr. Moore was carrying heroin, including the "WOLF" mark on the packets. Judge Williams was entitled to rely on the conclusion that Officer Yerges reached, based on his experience. *See United States v. Myers*, 308 F. 3d 251, 255 (3d Cir. 2002) ("[O]fficers may well draw inferences and make deductions that might well elude an untrained person."). The affidavit also notes that some of the packets tested positive for cocaine

base. Finally, Judge Williams could rely on the fact that Mr. Moore had 195 sealed packets on him, not just a handful. It stands to reason that the large quantity was for commerce, not for personal use, and Judge Williams could use her common sense to infer from such a large quantity of drugs "that the individual arrested as a result of the seizure is involved in selling drugs, rather than merely using them." *United States v. Whitner*, 219 F.3d 289, 298 (3d Cir. 2000); *see also United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 2001)("The amount of crack cocaine Hodge possessed indicated that he was "involved in selling drugs, rather than merely using them.").

     **2.**     **Evidence that Mr. Moore possessed or was domiciled at the apartment**

Officer Yerges's affidavit contained sufficient support for the premise that 3700 Gateway Drive, Apartment B118 was Mr. Moore's domicile. The affidavit explains that Mr. Moore had a car registered there, during his arrest officers recovered a key that fit the door of the apartment, officers observed him leaving from that location, and one of the officers confirmed with the apartment complex's rental office that Mr. Moore resided in building B. The totality of this evidence gave Judge Williams a substantial basis to conclude that Mr. Moore either possessed or was domiciled there.

     **3.**     **Evidence that the apartment contained contraband**

The Third Circuit has devised a non-exhaustive list of factors, the existence of which help to establish the required nexus between a suspect's drug-dealing activities and his home. *Stearn*, 597 F. 3d at 559. These factors include(a)

6

probable cause to arrest the suspect on drug-related charges; (b) the proximity of the suspect's residence to the location of criminal activity; and (c) the conclusions of experienced officers regarding where evidence of a crime is likely to be found. *Id.* at 559-60. "[T]hese factors are not requirements. Nor are these factors exhaustive." *Id.* at 560.

These factors, and other evidence, gave Judge Williams a substantial basis to conclude that the apartment contained contraband. When the officers arrested Mr. Moore, he was carrying a large quantity of drugs, he had just left the apartment, and Officers had reason to think he lived there. Those facts, coupled with the common sense conclusion that drug dealers often store drugs at their home, was enough to create the required substantial basis. To be sure, the evidence could have been stronger, and the officers could have gathered additional evidence to tie Mr. Moore (or his illegal activity) to the apartment. But the Court cannot say that Judge Williams lacked a substantial basis to infer a nexus between Mr. Moore's apparent drug dealing and his apartment.

### B.    Good Faith Exception

Even if there is no probable cause for a warrant, a court will admit evidence gathered pursuant to that warrant if officers act in reasonable reliance on a search warrant that a detached and neutral magistrate issued. *See United States v. Leon*, 468  U.S. 897, 926 (1984). The question is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922. "The mere existence of a warrant typically suffices to prove that an officer conducted a

search in good faith and justifies application of the good faith exception."
*United States v. Hodge*, 246 F.3d 301, 307-308 (3d Cir. 2001) (citing *Leon*, 468 U.S.
at 922).

The Third Circuit has recognized four "narrow circumstances … where the
good faith doctrine is not sufficient to override the warrant's lack of probable
cause." *Stearn*, 597 F.3d at 561. Of these four, only one is relevant here: the
good faith exception does not apply where the warrant was based on an
affidavit so lacking in indicia of probable cause as to render official belief in its
existence entirely unreasonable. *See Leon*, 468 U.S. at 923. An affidavit is "so
lacking in indicia of probable cause" when it contains nothing more than a
"bare bones" assertion that evidence will be found in the place searched. *Id.* at
926. These are the rare circumstances in which, although a neutral magistrate
has found probable cause to search, a lay officer executing the warrant could
not reasonably believe that the magistrate was correct. *Stearn*, 597 F.3d at 561.

This is not such a case. The affidavit was not a "bare bones" document. It
described the drugs that officers recovered from Mr. Moore and provided
information on where Mr. Moore lived. To be sure, as Mr. Moore points out, the
affidavit of probable cause could have been more fulsome. But if Judge
Williams wanted more information, she could have requested it. The officers
knew that she did not ask for more detail, so it was fair for them to assume that
she had the information she thought she needed to make a determination.
Judge Williams' finding of probable cause might have been a close call. But,
"[o]nce the magistrate judge made that call, it was objectively reasonable for

the officers to rely on it." *Hodge*, 246 F.3d at 309. Mr. Moore's argument to the contrary would put officers in the impossible position of having to review a magistrate's decision and substitute their own judgment about whether the magistrate had enough detail to satisfy the probable cause requirement. Officers do not have to do so; they can rely on a magistate's judgment that she has enough information to rule.

The only exception to that rule is a true bare-bones affidavit with no meaningful information, containing unsupported bald assertions. Officers who see that type of affidavit cannot rely on it in good faith. But they can rely on an affidavit with more detail, even if the detail falls short of establishing probabale cause.

Mr. Moore's reliance on two Third Circuit cases, *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002) and *Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011), does not change this outcome. In both cases, the Third Circuit refused to employ the good faith exception for a warrant supported, in part, by police officers' statements about the tendency of child sexual abusers to possess child pornography. That is, in both cases police officers tried to use evidence of one crime to suggest probable cause for the presence of evidence of a different crime. The Third Circuit rejected that as too big a logical leap. In contrast, Officer Yerges had evidence that Mr. Moore distributed drugs, and he asked Judge Williams to permit him to search for evidence of that crime. Officers could rely in good faith on the warrant that Judge Williams issued, authorizing them to seach for that evidence.

## IV.    CONCLUSION

A different judge might have reached a different conclusion when presented with Officer Yerges's affidavit. But that's not the test. The affidavit gave Judge Williams a substantial basis to conclude that probable cause existed. Even if it did not, the officers could rely on Judge Williams's decision to issue the warrant. The search of Mr. Moore's apartment did not violate his Fourth Amendment rights, and the Court will deny Mr. Moore's motion to suppress the evidence that officers obtained in that search. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.